## NORTHSIDE URBAN PATHWAYS CHARTER SCHOOL, Petitioner

v.

## STATE CHARTER SCHOOL APPEAL BOARD (Pittsburgh Public School District), Respondent.

Commonwealth Court of Pennsylvania.

Argued June 6, 2012.
Decided Oct. 26, 2012.

---

Mark G. Morford, Exton, for petitioner.

Robert M. Junker, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

Opinion by Judge LEAVITT.

Northside Urban Pathways Charter School (Northside) petitions for review of

an order of the State Charter School Appeal Board (CAB), which dismissed Northside's appeal from the Pittsburgh Public School District's (School District) denial of Northside's request to amend its charter to add new grades. Because the CAB erred in holding that it lacked jurisdiction to review Northside's appeal, we reverse and remand to the CAB for further proceedings. We also grant Northside's motion to strike the appendix to School District's brief and deny School District's application for leave to supplement the record.

On July 1, 1998, School District granted Northside a charter for a term of three years. Northside's charter was renewed for five-year terms in 2001 and 2006. By its charter, Northside is authorized to operate a charter school in Pittsburgh for grades six through twelve. Northside currently serves approximately 300 students, most of whom are poor and minority students from the Pittsburgh public school system. According to Northside, many of these students are foster children who benefit from their ability to remain at Northside as their family situation changes.

Northside touts its success as an independent charter school for the 13 years it has been in operation. Increasingly, however, Northside's educators have found that students entering grades six through eight have significant learning gaps compared to their peers. Northside has had to engage in what it describes as a "triage" approach to educating these new students by identifying those with the greatest needs and providing them with intensive training to bring them up to their grade level. Northside has determined that a better way to address this problem is to expand its school to include grades kindergarten through five. This will allow Northside to prevent learning gaps before they begin. Northside anticipates that devoting less of its resources to remediating deficits in its enrolling classes will enable it to develop more rigorous academic programs for its high school students.

Accordingly, on December 18, 2009, Northside submitted to School District an application to amend its charter to add grades K–5 at a second location. Northside's amendment application described the mission and education goals of the expanded school, the education plan of the expanded school, the methods of assessing whether students are meeting the expanded school's educational goals, the financial plan for the expanded school, and several potential physical facilities for the new elementary program.

School District initially responded on December 22, 2009, that it was reviewing Northside's amendment application. Thereafter, on February 2, 2010, School District sent Northside a letter stating:

> Due to the significance of the changes proposed, [School District] denies your proposal to undertake this plan via an amendment to your current charter for a 6–12 school. As your counsel was previously informed, the proposal to add grades K through five in a new facility requires the submission of a charter school application.

Reproduced Record at 84a (R.R. ——).

On March 3, 2010, Northside appealed School District's denial of its application to the CAB.[1] School District filed an answer

1. Northside also appealed the District's denial of its amendment request to the Allegheny County Court of Common Pleas, which dismissed the appeal for lack of jurisdiction. We affirm the trial court's decision by separate order also filed today. *See Northside Urban Pathways Charter School v. Pittsburgh Public School District*, 54 A.3d 445 (Pa.Cmwlth. 2012).

and motion to dismiss for lack of jurisdiction. Following briefing by both parties, the CAB granted School District's motion to dismiss on June 8, 2010. Northside now petitions for this Court's review.

On appeal,[2] Northside argues that the CAB erred in holding that it lacked jurisdiction over an appeal of the denial of a charter amendment application. Northside acknowledges that the Charter School Law[3] does not expressly contemplate charter amendments, but it contends that agencies have implied powers where necessary to fulfill their express mandates. Northside asserts that the CAB cannot fulfill its express mandates to oversee the opening and closing of charter schools without also exercising jurisdiction over amendments to charters. We agree. ·

 The jurisdiction of an administrative agency relates to the competence of that body to determine controversies of the general class to which the case presented for its consideration belongs. *Riedel v. Human Relations Commission of Reading*, 559 Pa. 34, 39, 739 A.2d 121, 124 (1999). An administrative agency's authority is limited to the powers granted by legislative enactment. *Mack v. Civil Service Commission*, 817 A.2d 571, 574 (Pa. Cmwlth.2003). However, Pennsylvania courts have recognized that "the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates." *Commonwealth v. Beam*, 567 Pa. 492, 496, 788 A.2d

357, 360 (2002). Thus, although the jurisdiction and power of administrative agencies are strictly construed, appellate courts "recognize that the General Assembly has prescribed that legislative enactments are generally to be construed in such a manner as to effect their objects and promote justice ... and, in assessing a statute, courts are directed to consider the consequences of a particular interpretation...." *Id.* at 495, 788 A.2d at 359. Stated another way, "statutory construction is not an exercise to be undertaken without considerations of practicality, precept and experience, as ignoring such considerations may result in a forced and narrow interpretation that does not comport with legislative intent." *Id.* at 495–96, 788 A.2d at 359–60 (quoting *Department of Environmental Resources v. Butler County Mushroom Farm*, 499 Pa. 509, 516–17, 454 A.2d 1, 5–6 (1982)).

The legislative enactment at issue in this case, the Charter School Law, is part of the Public School Code of 1949 (School Code).[4] Our Supreme Court considered the scope of a school district's implied authority under the School Code in *Burger v. Board of School Directors of McGuffey School District*, 576 Pa. 574, 839 A.2d 1055 (2003). Although *Burger* involved a school board's right to suspend its superintendent pending a termination hearing, it is nevertheless instructive. In *Burger*, our Supreme Court acknowledged that the removal provision at Section 1080 of the School Code, 24 P.S. § 10–1080,[5] did not

---

2. Our scope of review of an order of the Board is limited to determining whether constitutional rights were violated, errors of law committed or whether the decision is not supported by substantial evidence. *Community Service Leadership Development Charter School v. Pittsburgh School District*, 34 A.3d 919, 924 n. 7 (Pa.Cmwlth.2012).

3. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 17–1701–A—17–1751–A, added by the Act of June 19, 1997, P.L. 225.

4. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

5. It states:
 District superintendents and assistant district superintendents may be removed from

expressly contemplate the suspension of a superintendent. Nevertheless, the Court held that the school board possessed implied authority to suspend a school official accused of serious misconduct. The Court explained:

> [T]he express purpose of the School Code is to "establish a thorough and efficient system of public education, to which every child has a right." As such, the School Code vests school districts in this Commonwealth with "all necessary powers to enable them to carry out the [the School Code's] provisions." 24 P.S. § 2–211. While school districts are created by statute and, as such, have no power except that which is conferred by statutory grant and necessary implication, Section 211 of *the School Code reflects the General Assembly's explicit and open-ended confirmation of implied powers in furtherance of school districts' essential functions.*

*Burger,* 576 Pa. at 584–85, 839 A.2d at 1061–62 (citations and footnote omitted) (emphasis added). *See also City of Pittsburgh v. Pennsylvania Public Utility Commission,* 157 Pa.Super. 595, 43 A.2d 348, 349 (1945) (reciting the axiom that the powers of a commission created by statute "are confined to those expressly granted, or which may be necessary and proper to carry out those specifically declared."). The *Burger* court's explanation of the implied authority of a school district under the School Code is instructive on two levels.

▌First, *Burger* supports the conclusion that a school district has implied

authority to consider and act upon a charter amendment proposed by a charter school. This Court has held that a charter is a government license, not a contract. *Foreman v. Chester–Upland School District,* 941 A.2d 108 (Pa.Cmwlth.2008).[6] A school district is obligated to issue a charter if the applicant satisfies the criteria in the Charter School Law and, once issued, the charter school has a protected property interest in its charter. *See, e.g., Philadelphia Entertainment and Development Partners L.P. v. Pennsylvania Gaming Control Board,* 34 A.3d 261, 276 (Pa. Cmwlth.2011) (noting that "[g]overnment licenses to engage in a business or occupation create an entitlement to partake of a profitable activity, and, therefore, are property rights.") (citation omitted). Any adverse governmental decision with respect to a license—here, the denial of an amendment to a charter—must be subject to review, under due process and the Pennsylvania Constitution. *See id.* at 276 (noting that "some form of due process is required when an administrative agency revokes one's right to transact business in the Commonwealth.").

Furthermore, although the Charter School Law is silent on charter amendments, school districts and charter schools, as well as this Court, have acted in accordance with the assumption that they are valid and appropriate devices. *See, e.g., School District of Philadelphia v. Department of Education,* 41 A.3d 222 (Pa. Cmwlth.2012) (on review of Department's funding decision, this Court noted that charter school sought to increase enroll-

---

office and have their contracts terminated, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 P.S. § 10–1080.

6. A petition for allowance of appeal was granted in *Foreman* at 597 Pa. 235, 951 A.2d 264 (2008), but discontinued by praecipe on August 11, 2008.

ment and add kindergarten program through a charter amendment). Amendments to government licenses are also common in other regulatory arenas, such as certificates of public convenience issued by the Pennsylvania Public Utility Commission. *See, e.g., Yellow Cab Company of Pittsburgh v. Pennsylvania Public Utility Commission,* 105 Pa.Cmwlth. 513, 524 A.2d 1069 (1987) (application by taxicab company to amend its certificate of public convenience to expand its service area into the City of Pittsburgh); *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 101 Pa.Cmwlth. 244, 515 A.2d 1048 (1986) (application by interstate carrier to amend its certificate of public convenience to transport additional categories of goods statewide).

Second, the Supreme Court's implied authority analysis in *Burger* is applicable to the CAB, which is also a creature of the School Code by virtue of its enabling provision at Section 1721–A of the Charter School Law, 24 P.S. § 17–1721–A. The Charter School Law expressly vests the CAB with jurisdiction over every significant decision involving a charter school. The CAB has exclusive jurisdiction over appeals by applicants from the denial of their initial applications for a charter. Section 1717–A(i)(1) of the Charter School Law, 24 P.S. § 17–1717–A(i)(1). The CAB has jurisdiction to directly review and render a decision on a charter application where a school district fails to do so. Section 1717–A(g) of the Charter School Law, 24 P.S. § 17–1717–A(g). The CAB has exclusive jurisdiction over an appeal of a school district's decision to revoke or not renew a charter. Section 1729–A(d) of the

Charter School Law, 24 P.S. § 17–1729–A(d). Finally, Section 1721–A(b) of the Charter School Law provides that the CAB "shall meet as needed to fulfill the purposes provided in this subsection." 24 P.S. § 17–1721–A(b).

 By necessary implication, the Board's authority to perform the above enumerated functions includes jurisdiction to hear appeals of adverse decisions on proposed charter amendments. In so holding, we are cognizant of our prior observation that "local school boards have a significant interest in whether charters are granted; indeed the legislative history contains frequent references to the bias of local school boards against charter schools." *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452, 461 (Pa.Cmwlth.2000). The legislature dealt with this inherent bias by ensuring that the CAB has jurisdiction to review every significant decision that could be made by a school district with respect to a charter school. Without the oversight of the CAB, school districts could restrict the creation and growth of charter schools, thereby defeating the legislative intent of providing parents and students with expanded choices in public education.

The CAB's ability to conduct its independent review functions is undermined if it does not have jurisdiction over amendments to charters. A charter school's application, which is ultimately incorporated into the terms of the charter, is a very detailed document. The Charter School Law contains no less than 17 requirements for the application. Section 1719–A of the Charter School Law, 24 P.S. § 17–1719–A.[7]

---

**7.** Section 1719–A of the Charter School Law requires an applicant to submit an application that describes in detail the school's operations, including the curriculum, academic calendar, physical location, grade levels served, governance structure, admission policy, pro-

cedures for the suspension and expulsion of students, financial plan, procedures used to review complaints, the proposed faculty and professional development plan, and proof of liability and other insurance. 24 P.S. § 17–1719–A. These detailed terms are then incor-

Inevitably, though, these details will have to be adjusted during the life of a school. Northside provides one instructive example. If a charter school states in its charter application that it will be located in a particular building, then that provision becomes part of the school's charter. If the school changes its location during the term of the charter without amending its charter, it is subject to closure under Section 1729-A(a)(1) of the Charter School Law, 24 P.S. § 17-1729-A(a)(1).[8] However, a charter school may not have any choice but to change its location. Its landlord may choose to not renew the lease, or the building itself could be damaged and rendered unsafe. Under the CAB's holding in this case, although it has jurisdiction to decide whether a school can be opened or closed, it does not have jurisdiction over the equally fundamental decision to amend the charter to allow the school to continue to operate.[9] This is not consistent with the Charter School Law's purposes.

Northside also provides a persuasive example of how the need for a charter amendment can arise during the charter renewal process. A school's initial charter may require the school to use a curriculum that meets state academic standards. However, because state academic standards are subject to change, the charter school could find itself out of compliance with those standards. It makes sense for the charter school to address this issue by way of amendment when it seeks to renew its charter. The school district could deny renewal, and that decision is appealable to the CAB. However, the CAB would be without power to grant any effective relief to the charter school if it lacks jurisdiction to consider an amendment. If the CAB is compelled to simply renew the charter in its original form, then the charter school would be forced to choose between violating state standards or violating its own charter.

In summary, to hold, as School District suggests, that charters cannot be amended as a matter of law runs contrary to the legislature's intent to offer parents and students a charter school alternative to the schools in their district. Further, the School District's interpretation of the Charter School Law would place all the amended charters presently in force in Pennsylvania under a cloud. To say that a charter amendment can be done, but only

---

porated into the written charter, usually by reference. Section 1720-A(a) of the Charter School Law, 24 P.S. § 17-1720-A(a) (stating that "[u]pon approval of a charter application . . . a written charter shall be developed which shall contain the provisions of the charter application. . . .").

8. Section 1729-A(a)(1) states, in relevant part:

 During the term of the charter or at the end of the term of the charter, the local board of school directors may choose to revoke or not to renew the charter based on any of the following:

 (1) One or more material violations of any of the conditions, standards or procedures contained in the written charter. . . .

 24 P.S. § 17-1729-A(a)(1).

9. This would also be the consequence of the dissenting view that a charter cannot be amended to add a new building or grade levels, since those items are incorporated from the charter application into the "legally binding" charter. Dissenting Opinion at 90. To be sure, a charter is "legally binding" but that simply begs the question whether it can be amended. Although we answer that question above, we reiterate here that legally binding instruments such as licenses and contracts are capable of amendment, even with respect to material terms. Under the dissenting view, a charter school that is destroyed in an earthquake in year one of its charter could not amend its charter to relocate to a new facility. It would have to either begin the charter process anew or wait until its charter is up for renewal.

on the non-reviewable grace of a school district, would give school districts a veto power that is inconsistent with the overall purpose of the Charter School Law.

Further, as has been pointed out by the Department of Education, a single school cannot have two charters that expire on different days. This makes sense. To deny the possibility of a charter amendment would be very limiting upon the charter school. It would be bound to every item in its charter, such as school building location. To move to a new school building would require the charter school to set up a second corporation, obtain new funding, and form a new administration. This would make the Charter School Law unwieldy. It would also place the Charter School in a Catch–22 because the Department of Education has decreed that a single school cannot have two charters.

■ For all of the foregoing reasons, we reverse the order of the CAB and remand this matter for the CAB to review School District's decision in the same manner it would review a decision revoking or not renewing a charter. *See* Section 1729–

A(d) of the Charter School Law, 24 P.S. § 17–1729–A(d).[10]

Judge SIMPSON dissents.

### *ORDER*

AND NOW, this 26th day of October, 2012, the order of the State Charter School Appeal Board in the above-captioned matter, dated June 8, 2010, is REVERSED, and this matter is REMANDED for further proceedings consistent with the attached opinion. Northside Urban Pathways Charter School's motion to strike the appendix to the Pittsburgh Public School District's brief is GRANTED; the School District's application for leave to supplement the record is DENIED.

Jurisdiction is relinquished.

Dissenting opinion by President Judge PELLEGRINI.

Because the Charter School Law (CSL)[1] does not authorize a charter school to amend its charter to create another separate school at another location without first submitting a charter application for such a facility,[2] and because the State

---

10. Section 1729–A(d) provides as follows with respect to appeals to the CAB from the revocation or non-renewal of a charter:

Following the appointment and confirmation of the appeal board, but not before July 1, 1999, the charter school may appeal the decision of the local board of school directors to revoke or not renew the charter to the appeal board. The appeal board shall have the exclusive review of a decision not to renew or revoke a charter. The appeal board shall review the record and shall have the discretion to supplement the record if the supplemental information was previously unavailable. The appeal board may consider the charter school plan, annual reports, student performance and employe and community support for the charter school in addition to the record. The appeal board shall give due consideration to the findings of the local board of di-

rectors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision.
24 P.S. § 17–1729–A(d).

1. Act of March 10, 1949, P.L. 30, *added by* the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§ 17–1701–A—17–1751–A. The CSL is part of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

2. As this Court has explained, "[u]pon review of the CSL, we are satisfied that ... the CSL does not prohibit cross-membership of the charter schools' Boards of Trustees or ban one group of persons from applying for a charter for more than one charter school...." *McKeesport Area School District v. Propel Charter School McKeesport*, 888 A.2d 912, 921 (Pa.Cmwlth.2005).

Charter School Appeal Board (CAB) does not possess jurisdiction to consider the appeal of a school district's denial of a charter school's request to amend its charter, I respectfully dissent.

In this case, the Pittsburgh Public School District (District) granted Northside Urban Pathways Charter School's (Northside) application to operate a charter school for students in grades six through twelve in the District. Northside sought through an amendment of its existing charter to open a charter school to educate children in grades kindergarten through five in a separate facility. The District denied the amendment stating that Northside was required to file a new charter school application. Northside appealed that determination to the CAB which dismissed it because it lacked jurisdiction to hear the appeal.

Acknowledging that there is no statutory authority for its position, the majority holds that a school district has "implied authority"[3] to issue these amendments because there must be some way to amend its application if it has to change locations and that the CAB has implied jurisdiction to hear the appeal. I respectfully dissent.

## I.

Contrary to the majority, Northside did not merely request to amend the "regulatory permit"[4] to operate its charter school for grades six through twelve because it is either impossible or impractical to operate the school according to its charter. Rather, Northside is asking to create a separate and distinct charter school serving a different student population with different educational needs in a different physical facility. The CSL does not empower Northside to amend its existing charter to create a separate charter school without first submitting a charter application.

The CSL provides that a charter school may only be created by application to establish either a single district charter school under 24 P.S. § 17–1717–A or a multi-district regional charter school under 24 P.S. § 17–1718–A(a). The CSL also provides that a charter school has the authority to set its enrollment age or grade levels and may operate exclusively as an elementary school, a middle school, a high school or a combination thereof. *Slippery Rock Area School District v. Pennsylvania Cyber Charter School*, 612 Pa. 486, 497–501, 31 A.3d 657, 664–65 (2011).[5]

---

**3.** The majority bases its finding that the District has implied authority on *Burger v. Board of School Directors of McGuffey School District*, 576 Pa. 574, 584–85, 839 A.2d 1055, 1061–62 (2003), where our Supreme Court held that while school districts are generally limited to the powers expressed in the School Code, the broad grant of powers in 24 P.S. § 2–211, vesting districts "with all necessary powers to enable them to carry out the provisions of [the School Code] ...", included the implied power to suspend a superintendent charged with "serious misconduct" in the absence of an explicit provision in that regard. In contrast, regarding charter schools, the District is limited to approving or revoking charters. 24 P.S. § 17–1717–A; 24 P.S. § 17–1729–A. Because the District's power is statutorily prescribed, it has no residual powers left that it could implicitly exercise.

**4.** *See Foreman v. Chester–Upland School District*, 941 A.2d 108, 115 (Pa.Cmwlth.2008) (holding that the grant of a charter is not a contract, but more like the issuance of a regulatory permit where the state or local government must honor the terms of the charter unless breached by the party receiving the charter).

**5.** As our Supreme Court explained, in the context of a cyber charter school:

We recognize, however, that the General Assembly has not granted Cyber School unfettered authority under section 17–1719–A. We observe that section 17–1719–A(3) is necessitated by the very nature of charter schools. In our view, this section derives from the fact that a charter school may offer a limited curriculum, electing—under

However, 24 P.S. § 17–1719–A(3) and (11)[6] state that an application to establish a charter school must indicate the grades or age levels to be served by the school[7] and the address and description of the physical facility in which the charter school

the clear language of the CSL—to serve only particular grade levels. Stated differently, a charter school may operate exclusively as an elementary school, a middle school, a high school, or a combination thereof. Thus, the statutory provision requiring a cyber charter school to set forth in its application the "ages or grades" to be served stems, at least in part, from the fact that a cyber charter school need not offer a complete education to its students. Section 17–1719–A addresses the issue by requiring the school to identify its intended scope in the charter application....

*Id.* (footnote omitted).

6. 24 P.S. § 17–1719–A states:

An application to establish a charter school shall include all of the following information:

(1) The identification of the charter applicant.

(2) The name of the proposed charter school.

**(3) The grade or age levels served by the school.**

(4) The proposed governance structure of the charter school, including a description and method for the appointment or election of members of the board of trustees.

(5) The mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals.

(6) The admission policy and criteria for evaluating the admission of students which shall comply with the requirements of section 1723–A.

(7) Procedures which will be used regarding the suspension or expulsion of pupils. Said procedures shall comply with section 1318.

(8) Information on the manner in which community groups will be involved in the charter school planning process.

(9) The financial plan for the charter school and the provisions which will be made for auditing the school under section 437.

(10) Procedures which shall be established to review complaints of parents regarding the operation of the charter school.

**(11) A description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements.**

(12) Information on the proposed school calendar for the charter school, including the length of the school day and school year consistent with the provisions of section 1502.

(13) The proposed faculty and a professional development plan for the faculty of a charter school.

(14) Whether any agreements have been entered into or plans developed with the local school district regarding participation of the charter school students in extracurricular activities within the school district. Notwithstanding any provision to the contrary, no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

(15) A report of criminal history record, pursuant to section 111, for all individuals who shall have direct contact with students.

(16) An official clearance statement regarding child injury or abuse from the Department of Public Welfare as required by 23 Pa.C.S. Ch. 63 Subch. C.2 (relating to background checks for employment in schools) for all individuals who shall have direct contact with students.)

(17) How the charter school will provide adequate liability and other appropriate insurance for the charter school, its employes and the board of trustees of the charter school. (Emphasis added.)

7. *See also* 24 P.S. § 17–1723–A(b)(2) ("[A] charter school may limit admission to a particular grade level, a targeted population group composed of at-risk students, or areas of concentration of the school such as mathematics, science or the arts....").

will be located. Under 24 P.S. § 17–1720–A(a),[8] the specific terms of Northside's application, including the limited student population to be educated[9] and the specific physical facility of its charter school,[10] were incorporated into Northside's charter and became "legally binding" on both Northside and the District. There is simply no provision in the CSL authorizing Northside to create a separate charter school facility to serve students of different ages or grade levels by mere amendment[11] to its charter without first submitting an application to the District.[12]

## II.

Moreover, even if Northside could file an amendment, the CAB properly determined that it did not have jurisdiction over the District's denial of Northside's request to amend its charter because the CAB's jurisdiction under the CSL is limited to appeals from a district's denial of an application, 24 P.S. §§ 17–1717–A(i)(1), 17–1718–A(c); appeals from a district's deemed denial of an application, 24 P.S. §§ 17–1717–A(g), 17–1718–A(c); and appeals from a district's revocation or nonrenewal of a charter, 24 P.S. § 17–1729–A(d).

Additionally, 24 P.S. § 17–1721–A merely provides that the CAB "shall meet as needed to fulfill the purposes provided in this subsection...." Thus, 24 P.S. § 17–1721–A does not confer any additional implied powers upon the CAB, but merely requires the CAB to meet as needed to exercise those powers specifically conferred by the CSL, including its appellate jurisdiction under 24 P.S. §§ 17–1717–A(g) and (i)(1), 17–1718–A(c), and 17–1729–A(d). Rather, jurisdiction over an appeal of any other action by the District involving a

---

8. 24 P.S. § 17–1720–A states, in pertinent part:

Upon approval of a charter application under section 1717–A, **a written charter shall be developed which shall contain the provisions of the charter application** and which shall be signed by the local board of school directors of a school district, by the local boards of school directors of a school district in the case of a regional charter school or by the chairman of the appeal board pursuant to section 1717–A(i)(5) and the board of trustees of the charter school. This written charter, when duly signed by the local board of school directors of a school district, or by the local boards of school directors of a school district in the case of a regional charter school, and the charter school's board of trustees, shall act as legal authorization for the establishment of a charter school. This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees. **Except as otherwise provided in subsection (b), the charter shall be for a period of no less than three (3) nor more than five (5) years and may be renewed for five (5) year periods upon reauthorization by the local board of school directors of a school dis-**

trict or the appeal board.... (Emphasis added.)

9. 24 P.S. § 17–1719–A(3).

10. 24 P.S. § 17–1719–A(11).

11. This is not to say that either a change of the facility or population to be served cannot be considered when the school's charter is up for renewal. 24 P.S. § 17–1720–A.

12. The only district that can allow a charter school to operate at more than one location under one charter is the School District of Philadelphia. 24 P.S. § 17–1722–A(d) states that "[n]otwithstanding any other provision of this act, a school district of the first class may, in its discretion, permit a charter school to operate its school at more than one location." In turn, 24 P.S. § 2–202 states, in pertinent part, that "[e]ach school district having a population of one million (1,000,000), or more, shall be a school district of the first class...." Because the District is not a first class school district, it does not possess the discretion to permit Northside to operate its charter school at more than one location or physical facility.

charter school is appealable under the local agency law to the Court of Common Pleas of the county in which the District is located. 2 Pa.C.S. §§ 101, 752; 42 Pa.C.S. § 933(a)(2). *See generally Merrell v. Chartiers Valley School District*, 579 Pa. 97, 103 n. 4, 855 A.2d 713, 716 n. 4 (2004) ("We note that we have previously determined that a School District along with its Board is a local agency pursuant to the Local Agency Law.") (citation omitted).

Accordingly, the CAB's order should be affirmed.