NEW HOPE ACADEMY CHARTER
SCHOOL, Petitioner

v.

SCHOOL DISTRICT OF the CITY
OF YORK, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.

Decided April 8, 2014.

Robert W. O'Donnell and Jeffrey R. Stacey, Philadelphia, for petitioner.

Allison S. Petersen, Huntingdon Valley, for respondent School District of the City of York.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This matter is a petition for review filed by New Hope Academy Charter School (New Hope) appealing an order of the State Charter School Appeal Board (Board) that upheld the decision of the School District of the City of York's School Board (School Board) denying renewal of New Hope's charter. For the reasons set forth below, we conclude that renewal of New Hope's charter was properly denied for failure to meet state academic perform-

ance requirements. We therefore affirm the Board.

### Facts and Procedural History

In 2007, the School District of the City of York (School District) granted New Hope a five-year charter under the Charter School Law.[1] New Hope's charter provided that it was to be a middle school and high school encompassing grades 7 through 12, with approximately 84 students per grade. In accordance with its charter, New Hope began operations with grades 7 and 8 in the 2007–2008 school year and added grades 9 and 10 in the 2008–2009 school year. New Hope's charter originally provided that it would add grades 11 and 12 in the 2009–2010 school year. As a result of charter amendments requested by New Hope and granted by School District expanding New Hope to include grades 5 and 6, New Hope added grades 6 and 11 in 2009–2010, added grade 12 in 2010–2011, and added grade 5 in 2011–2012.

New Hope's charter included in its "measurable academic goals and objectives" that "[t]he student will meet the proficient level in language arts and mathematics." (New Hope Charter and Charter Application at 15, Reproduced Record (R.R.) at 3a, 616a.) New Hope's charter also provided that achievement of its goals and objectives would be measured by the Pennsylvania System of School Assessment (PSSA), stating that "[s]cores from the PSSA will be used to measure the student progress in regards to the State Standards." (Id. at 92, R.R. at 694a.)

The percentages of New Hope's students scoring proficient or better on the PSSA in the five years of its charter were as follows:

|      | Reading | Math  |
|------|---------|-------|
| 2008 | 36.6%   | 19.9% |
| 2009 | 32.6%   | 22.4% |
| 2010 | 32.5%   | 31.5% |
| 2011 | 34.7%   | 32.2% |
| 2012 | 37%     | 35%   |

(Board Opinion Finding of Fact (F.F.) ¶ 28 and Discussion at 27–28; School Board Certified Record (C.R.) Ex. J SD–14, SD–15, SD–16; Board C.R. SD Supplemental Ex. C.) The increases in math proficiency correspond in part to higher proficiency rates in new 7th grade and 6th grade classes, not solely to increased proficiency levels in existing students from one year to the next. (See, e.g., School Board C.R. Ex. J SD–14 (showing 2009 math proficiency rates of 37% for 7th grade vs. 14.8% for 8th grade, and 2010 math proficiency rates of 33% for 6th grade and 40.4% for 7th grade vs. 31.3% for 8th grade).) For 11th graders, the group that would have been at New Hope the longest, the percentage of New Hope students scoring proficient or better was only 26.6% in reading and 17.7% in math in 2011 and 25% in reading and 14% in math in 2012. (Board Opinion F.F. ¶ 30; School Board C.R. Ex. J SD–14; Board C.R. SD Supplemental Ex. C.) New Hope's percentages of students scoring proficient on the PSSA have been lower than the percentages of students scoring proficient in School District's schools in all years that it has been in existence. (Board Opinion F.F. ¶ 29 and Discussion at 28–29; School Board C.R. Ex. J SD–14; School Board C.R. February 29, 2012 Hearing Transcript (H.T.) at 94, R.R. at 306a.)

The Pennsylvania Department of Education (PDE) set the following Adequate Yearly Progress (AYP) standards under

---

1. Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, as amended, 24 P.S. §§ 17–1701–A—17–1751–A.

the No Child Left Behind Act[2] for the percentage of students scoring proficient or better on the PSSA: 63% in reading and 56% in math for 2008–2010, 72% in reading and 67% in math for 2011, and 81% in reading and 78% in math for 2012. (Board Opinion at 27; Pennsylvania Consolidated State Application Accountability Workbook at 31–32, R.R. at 572a–573a.) Even if a school does not satisfy those AYP proficiency thresholds, AYP can also be achieved through other safe harbor and growth methods based on reductions in the percentage of non-proficient students and improvements in scores toward proficiency. (Pennsylvania Consolidated State Application Accountability Workbook at 25–26, R.R. at 566a–567a; School Board C.R. February 23, 2012 H.T. at 115–23, R.R. at 165a–171a.) New Hope did not make AYP under any of the methods permitted by Pennsylvania for achieving AYP in any of the years it has been in existence and has now been placed in Corrective Action II by PDE. (Board Opinion F.F. ¶ 26 and Discussion at 27; School Board C.R. March 8, 2012 H.T. at 36–37, R.R. at 386a–387a; School Board C.R. February 23, 2012 H.T. at 124–25, 130–31, R.R. at 173a, 177a–178a.)

In the fall of 2011, the final year of its original charter term, New Hope hired an education consultant, Dr. Michael Clemens, to help it improve its academic performance. (Board Opinion at 29; School Board C.R. February 29, 2012 H.T. at 72–74, 81–82, R.R. at 284a–286a, 293a–294a.) Dr. Clemens concluded that New Hope was weak in the areas of "curriculum, instruction, and assessments aligned with state standards," "the frequent monitoring of learning and teaching," and "focused professional development." (Board Opinion at 29; School Board C.R. February 29, 2012 H.T. at 86–87, R.R. at 298a–299a.)

In Dr. Clemens' opinion, New Hope's curriculum, at the time of his review in late 2011, was not aligned with Pennsylvania state academic standards as required by 22 Pa.Code Chapter 4. (Board Opinion at 29; School Board C.R. February 29, 2012 H.T. at 88–89, R.R. at 300a–301a.)

New Hope's founder, Isiah Anderson, owns three companies that do substantial business with New Hope: Three Cord, Inc. (Three Cord), Three Cord Youth Services, LLC (TCYS), and I. Anderson Real Estate. (Board Opinion F.F. ¶ 32; School Board C.R. March 1, 2012 H.T. at 63, 66–69.) Three Cord is a for-profit company solely owned by Anderson that was incorporated by him in February 2007. (Board Opinion F.F. ¶ 33; School Board C.R. March 1, 2012 H.T. at 63–64.) Three Cord manages New Hope under written management agreements that require New Hope to pay Three Cord 15% of its gross revenues and entitle Three Cord to 50% of any unrestricted net income after expenses. (Board Opinion F.F. ¶ 34; School Board C.R. Ex. K NH–14 Management Agreement ¶¶ 6.5, 6.7, R.R. at 19a–20a; School Board C.R. Ex. J SD–46 Amended and Restated Management Agreement ¶¶ 9.1–9.4.) TCYS operates Challenge Academy, an Alternative Education for Disruptive Youth (AEDY) program in which New Hope places disruptive students. (Board Opinion F.F. ¶¶ 33, 35; School Board C.R. February 23, 2012 H.T. at 46, R.R. at 108a; School Board C.R. March 1, 2012 H.T. at 68; Board C.R. NH Supplemental Ex. 7 at 22.) I. Anderson Real Estate owns the school building that New Hope uses and leases it to New Hope. (Board Opinion F.F. ¶¶ 36–37; School Board C.R. March 1, 2012 H.T. at 75–77; School Board C.R. Ex. J SD–45a; Board C.R. NH Supplemental Ex. 7 at 22.)

2. 20 U.S.C. §§ 6301–7941.

Anderson is not a member of New Hope's board of trustees and is not a salaried employee of New Hope. (Board Opinion at 47; School Board C.R. Ex. J SD–38 at 7, SD–39 at 7, SD–40 at 7; Board C.R. NH Supplemental Ex. 6 at 7.) New Hope's charter, however, provided that "Mr. Anderson will administer the school during the first few years of start-up." (New Hope Charter and Charter Application at 6, R.R. at 3a, 607a.) New Hope listed Anderson as its "principal officer" and "managing director" in its 2008 and 2009 tax filings and listed Anderson as its Managing Officer on its letterhead as late as November 2010, and Anderson in 2011 and 2012 filed statements of financial interests stating that he was the "Managing Officer" of New Hope in 2010 and 2011. (School Board F.F. ¶¶ 194–195, R.R. at 488a–489a, adopted by Board Opinion F.F. ¶ 41; School Board C.R. Ex. J SD–37, SD–38 at 1, 7, SD–39 at 1, 7; School Board C.R. Ex. K NH–14, R.R. at 10a.)

New Hope's board of trustees agreed to the management agreements, leases and contract with TCYS without discussion or consideration of their terms. (Board Opinion at 46–51; School Board C.R. March 6, 2012 H.T. at 141–46, 157, 160–77; School Board C.R. Ex. J SD–36, SD–49.) Under these contracts, New Hope paid Three Cord, TCYS and I. Anderson Real Estate a total of $766,460 in its 2008 fiscal year, $1,339,662 in its 2009 fiscal year, $1,483,718 in its 2010 fiscal year, and $2,418,568 in its 2011 fiscal year. (School Board C.R. Ex. J SD–38 at 8, SD–39 at 8, SD–40 at 8; Board C.R. NH Supplemental Ex. 6 at 8.)

On January 30, 2012, School District sent a letter to New Hope stating that it did not intend to renew New Hope's char-

ter. On February 16, 2012, School District issued an Amended Nonrenewal Notice setting forth its reasons for the nonrenewal, including failure to meet student academic performance requirements and violation of state laws and fiduciary standards in its contracts with Anderson's businesses. (School Board C.R. Ex. B, R.R. at 67a–70a.) Between February 23, 2012 and March 19, 2012, the School Board held seven days of public hearings on the nonrenewal. Following a period for public comment, the School Board on July 18, 2012, voted to not renew New Hope's charter. On August 15, 2012, the School Board issued a 78–page written adjudication setting forth its reasons for denying renewal. (School Board Adjudication, R.R. at 446a–523a.)

New Hope appealed the nonrenewal of its charter to the Board. The record before the Board consisted of the School Board certified record and some supplemental exhibits submitted by New Hope and School District, including 2012 student PSSA scores. (Board C.R. Item 14.) New Hope and School District agreed that no evidentiary hearing before the Board was necessary. (Board Opinion at 2.)

The Board voted unanimously on October 15, 2013 to deny New Hope's appeal. On October 29, 2013, the Board issued a 52–page opinion and order concluding that the evidence established several separate grounds for nonrenewal of New Hope's charter, including failure to meet student academic performance requirements and violations of the Public Official and Employee Ethics Act (Ethics Act)[3] and the Nonprofit Corporation Law of 1988 (Nonprofit Law)[4] in New Hope's contracts with Anderson's businesses.[5] The Board ordered that New Hope dissolve in accor-

---

**3.** 65 Pa.C.S. §§ 1101–1113.

**4.** 15 Pa.C.S. §§ 5101–6162.

**5.** The Board also held that New Hope admitted students outside the time limit permitted in its charter; that New Hope delayed admission decisions and enrollment for student aca-

dance with the Charter School Law, but, on New Hope's application for a stay pending appeal, granted New Hope a stay of that order until June 4, 2014, the end of New Hope's school year.

On November 26, 2013, New Hope timely filed a petition for review appealing the Board's decision to this Court.[6] Our review of the Board's decision is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence. *Northside Urban Pathways Charter School v. State Charter School Appeal Board,* 56 A.3d 80, 83 n. 2 (Pa.Cmwlth.2012) (*en banc* ).

### Discussion

### Nonrenewal For Failure To Meet Student Performance Requirements

Section 1729–A(a)(2) of the Charter School Law permits a school district to

deny renewal of a charter school's charter for failure to meet student academic performance standards. 24 P.S. § 17–1729–A(a)(2); *Ronald H. Brown Charter School v. Harrisburg City School District,* 928 A.2d 1145, 1152–53 (Pa.Cmwlth.2007). Section 1729–A(a)(2) provides:

(a) During the term of the charter or at the end of the term of the charter, the local board of school directors may choose to revoke or not to renew the charter based on any of the following:

\*      \*      \*

(2) Failure to meet the requirements for student performance set forth in 22 Pa. Code Ch. 5 (relating to curriculum) or subsequent regulations promulgated to replace 22 Pa.Code Ch. 5 or failure to meet any performance standard set forth in the written charter signed pursuant to section 1716–A.

demic and disciplinary records in violation of state regulations; that New Hope's placement of students in Challenge Academy without PDE approval violated state law concerning AEDY; that New Hope's delays in reporting student absences to School District violated state truancy and compulsory attendance law; and that New Hope trustees and high-ranking administrators had repeatedly failed to file statements of financial interests in violation of Section 1104(a) of the Ethics Act. (Board Opinion Conclusions of Law ¶¶ 17–23, and Discussion at 34–46.) New Hope argues that these rulings are either insufficient grounds for nonrenewal of a charter or legally invalid. Because we affirm the Board's conclusion that New Hope's poor academic performance constituted sufficient grounds by itself for nonrenewal of New Hope's charter and these issues are unrelated to that determination, we need not consider and do not decide whether any of these other grounds would be sufficient to deny renewal by themselves or whether the Board committed any errors in its rulings on these other, separate grounds for nonrenewal.

**6.** In this Court, New Hope sought a further stay of the Board's decision, which the Court

denied on the ground that no further stay beyond the end of New Hope's school year was necessary to prevent irreparable harm in light of the expedited briefing schedule in this case. *New Hope Academy Charter School v. School District of the City of York,* (Pa. Cmwlth. No. 2105 C.D.2013, filed January 30, 2014) (single judge op., Colins, S.J.). New Hope also filed a motion to add to the certified record an application for rehearing and accompanying documents that it filed with the Board after the Board's decision, which the Court denied in the same opinion on the ground that those items were not part of the record before the Board when it issued its decision. *See Anam v. Workmen's Compensation Appeal Board (Hahnemann),* 113 Pa. Cmwlth. 483, 537 A.2d 932, 934–35 (1988). New Hope sought to submit the application for rehearing and accompanying documents on the issue of whether it violated the admissions policy in its charter, an issue that we do not address, and it has not contended that these materials contain anything relevant to the nonrenewal of its charter for failure to meet academic performance requirements or anything relevant to its contracts or relationship with Anderson and his companies.

24 P.S. § 17–1729–A(a)(2). Chapter 5 of Title 22 of the Pennsylvania Code, to which Section 1729–A(a)(2) refers, has been repealed and replaced by 22 Pa.Code Chapter 4. 29 Pa. B. 399 (1999). The regulations referenced in Section 1729–A(a)(2) are therefore those set forth in 22 Pa.Code Chapter 4.

Chapter 4 of Title 22 of the Pennsylvania Code sets forth the PSSA as the measure of student and school performance and sets standards of performance to be measured by the PSSA, including proficiency. 22 Pa.Code §§ 4.2, 4.51(a), (b), (e).[7] The Chapter 4 regulations also provide that the PSSA is designed to measure "student and school performance consistent with the No Child Left Behind Act." 22 Pa.Code § 4.51(a)(1). The No Child Left Behind Act requirements that Chapter 4 references, including proficiency as the measure for AYP, the AYP standards for the percentage of students scoring proficient or better, and alternative methods for achieving AYP, are set forth in 22 Pa.Code Chapter 403, 22 Pa.Code §§ 403.1–403.3, and the Pennsylvania Consolidated State Application Accountability Workbook developed by PDE pursuant to 22 Pa.Code § 403.3 and approved by the United States Department of Education. (School Board C.R. Ex. J SD–31, R.R. at 542a–598a; *see* School Board C.R. February 23, 2012 H.T. at 112–23, R.R. at 163a–172a.)

Proficiency as measured by PSSA test scores is therefore a Chapter 4 student performance requirement. 22 Pa.Code § 4.51(a), (b), (e); *Ronald H. Brown Charter School,* 928 A.2d at 1152–53.[8] A consistently low percentage of students scoring proficient or better on the PSSA constitutes a failure to satisfy Chapter 4 student performance requirements and is a valid ground for nonrenewal of a school's charter under Section 1729–A(a)(2) of the Charter School Law where the charter school's proficiency rates are lower than those of its school district's schools as a whole and no clear pattern of significant improvement in its PSSA results is shown. *Ronald H. Brown Charter School,* 928 A.2d at 1152–53.

The Board properly applied these principles. The Board did not uphold the nonrenewal based on the mere fact that New Hope's proficiency rates fell below AYP levels for a particular year. Rather, the Board based its conclusion that New Hope failed to meet Chapter 4 student performance requirements on the fact that New Hope's percentages of students scoring proficient or better on the PSSA in both reading and math were far below all applicable AYP proficiency standards in all years of its existence, that New Hope's proficiency rates were below the performance of School District's schools as a whole, and that New Hope failed to make AYP in any of its years of operation by any of the means of achieving AYP. (Board Opinion at 27–30.) Moreover, the Board found that New Hope's curriculum was not

---

**7.** On March 1, 2014, the Chapter 4 regulations were amended to place some of the provisions of 22 Pa.Code § 4.51 in new regulations, 22 Pa.Code §§ 4.51a, 4.51b and 4.51c. Except where specifically noted, all citations in this opinion to regulations in 22 Pa.Code Chapter 4 are to the regulations in existence at the time of the nonrenewal of New Hope's charter and the Board's decision.

**8.** The Chapter 4 regulations provide that high school level Keystone Exams are to be developed and supplant the PSSA for 11th grade upon approval by the United States Department of Education. 22 Pa.Code § 4.51(f); 22 Pa.Code § 4.51b (adopted March 1, 2014). After implementation of that change, the Keystone Exam results would become the proper measure of 11th grade performance, although the PSSA will remain the measure of student performance for the other years that are tested.

in compliance with Chapter 4's academic standards and that determination is supported by substantial evidence. (Board Opinion at 29, 34; School Board C.R. February 29, 2012 H.T. at 87–89, R.R. at 299a–301a.)

In addition, the Board considered whether New Hope had improved its student performance and concluded that it had not shown real or steady improvement. (Board Opinion at 28–29.) This conclusion is supported by the record. The percentage of New Hope students scoring proficient or better on the PSSA in reading increased only a total of 0.4% between 2008 and 2012 and declined in two of the intervening years. (School Board C.R. Ex. J SD–14, SD–15, SD–16; Board C.R. SD Supplemental Ex. C.) While the percentage of New Hope students scoring proficient or better in math did improve, rising from 19.9% in 2008 and 22.4% in 2009 to 35% in 2012, the Board took that fact into account, and the record supports its conclusion that the proficiency rates for specific grades and years do not show a pattern of steady improvement in math. (Board Opinion at 28; School Board C.R. Ex. J SD–14; Board C.R. SD Supplemental Ex. C.)

■ New Hope does not dispute that its students' PSSA scores were low in all of the years that it has been in operation. Instead, it contends that Chapter 4 of Title 22 of the Pennsylvania Code does not set forth any "requirements for student performance" and argues, disregarding our decision in *Ronald H. Brown Charter School,* that poor academic performance can therefore never constitute a "[f]ailure to meet the requirements for student performance set forth in 22 Pa.Code Ch. 5 (relating to curriculum) or subsequent reg-

ulations promulgated to replace 22 Pa. Code Ch. 5" under Section 1729–A(a)(2). We do not agree.

Contrary to New Hope's assertion, as discussed above, Chapter 4 does set forth a measurement and requirement of student academic performance: the PSSA and proficiency as measured by the PSSA. 22 Pa.Code § 4.51(a), (b), (e). Indeed, New Hope specifically recognized in its charter that it was subject to these standards and to AYP standards. (New Hope Charter and Charter Application at 15–18, 92, R.R. at 3a, 616a–619a, 694a.)

While Chapter 4 does not itself contain the AYP proficiency thresholds or alternative methods of achieving AYP, those AYP standards are set forth in the regulations and accountability system promulgated by PDE under the No Child Left Behind Act, which Chapter 4's assessment system is specifically designed to satisfy. *See* 22 Pa.Code §§ 4.51(a)(1), 403.3. The Board concluded, based on the connections between Chapter 4 and the AYP regulations and accountability workbook, that the AYP standards are encompassed in the "requirements for student performance set forth in 22 Pa.Code Ch. 5 (relating to curriculum) or subsequent regulations promulgated to replace 22 Pa.Code Ch. 5." (Board Opinion at 25–27, 30.) That is a reasonable interpretation of the statutory language and is entitled to great deference from this Court. *McKeesport Area School District v. Propel Charter School McKeesport,* 888 A.2d 912, 919 n. 9 (Pa.Cmwlth. 2005) (Board's interpretation of the Charter School Law is entitled to great deference); *Brackbill v. Ron Brown Charter School,* 777 A.2d 131, 138 n. 7 (Pa.Cmwlth. 2001) (same).[9] The Board therefore prop-

---

9. Nothing in Section 1729–A(a.1) of the Charter School Law suggests that poor academic performance cannot be a basis for nonrenew-

al under Section 1729–A(a)(2). The powers given to a school district of the first class by Section 1729–A(a.1) are not additional

erly considered both New Hope's student performance in comparison to AYP standards and its failure to achieve AYP in upholding the nonrenewal of its charter under Section 1729–A(a)(2) of the Charter School Law.

■ Moreover, where a provision of the Charter School Law is unclear, we must interpret it to effectuate the purposes of the Charter School Law and the Public School Code of 1949 (Public School Code).[10] *Northside Urban Pathways Charter School,* 56 A.3d at 83–87 (interpreting Charter School Law to permit charter amendments and Board review of amendment denials despite lack of specific amendment provision in order to fulfill purposes of Charter School Law and Public School Code). The core purpose of the Charter School Law is to improve students' education. Section 1702–A(1), (2), (6) of the Charter School Law, 24 P.S. § 17–1702–A(1), (2), (6); *McKeesport Area School District,* 888 A.2d at 917. The General Assembly expressly set forth its intention in enacting the Charter School Law to "[i]mprove pupil learning," "[i]ncrease learning opportunities for all pupils," and "[h]old the schools established under this act accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems." 24 P.S. § 17–1702–A(1), (2), (6); *see also McKeesport Area School District,* 888 A.2d at 917.

■ In addition, because the fundamental purpose of the Public School Code is to provide "a thorough and efficient system of public education" in accordance with Article III, Section 14 of the Pennsylvania Constitution, all statutes that are part of the Public School Code must be interpreted to permit school districts to take actions necessary to provide students a good education. *Burger v. Board of School Directors of McGuffey School District,* 576 Pa. 574, 584–85, 839 A.2d 1055, 1061–62 (2003); *School District of Wilkinsburg v. Wilkinsburg Education Association,* 542 Pa. 335, 341–46, 667 A.2d 5, 8–10 (1995); *Appeal of Walker,* 332 Pa. 488, 491, 2 A.2d 770, 772 (1938); *Northside Urban Pathways Charter School,* 56 A.3d at 83–84. "The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth." *Appeal of Walker,* 332 Pa. at 491, 2 A.2d at 772. The Charter School Law is a part of the Public School Code and must be interpreted to carry out the purpose of providing a quality education. *Northside Urban Pathways Charter School,* 56 A.3d at 83.

New Hope's restrictive construction of Section 1729–A(a)(2) is incompatible with the purposes of the Charter School Law and the Public School Code. Interpreting Section 1729–A to require school districts to renew charters of clearly failing schools is antithetical to the Charter School Law's purposes of improving education and holding charter schools accountable for their academic performance. A holding that the

---

grounds for nonrenewal. Rather, Section 1729–A(a.1) allows a school district of the first class to impose its own conditions in granting a charter renewal that require the school to meet specific performance targets within specific time frames during the renewal term, and to impose those conditions on the renewal without a right of the school to appeal the conditions to the Board. 24 P.S. § 17–1729–A(a.1). Nonrenewal for academic

performance under Section 1729–A(a)(2) is not an imposition of any condition or performance requirement by the school district, it is a consequence of the charter school's failure to meet state requirements for student performance.

**10.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

Charter School Law requires that charter schools remain open despite student academic performance that is consistently far below state standards would violate the overriding purpose of the Public School Code to provide "a thorough and efficient system of public education," and could raise issues of unconstitutionality under Article III, Section 14 of the Pennsylvania Constitution. *School District of Wilkinsburg*, 542 Pa. at 341–44, 667 A.2d at 8–9 (interpretation of Public School Code that prohibited subcontracting of teachers could violate Article III, Section 14 if it prevented school district from addressing poor academic performance of public schools).

■ We also reject New Hope's contention that local school district performance cannot be considered in denying a charter renewal under Section 1729–A(a)(2). Comparison of a charter school's academic performance to its local school district in applying Section 1729–A(a)(2) is appropriate for two reasons. First, a charter school's students are drawn from the same population as the school district's schools and, where, as here, the charter school is a middle school or high school, its students come from the same group of elementary schools as the school district schools and therefore are likely to have a similar educational background to the students in school district schools. The school district's academic results therefore provide some indication of whether the charter school's academic results are connected to its educational performance or are instead due to preexisting educational disadvantages and deficiencies in the school district.

Second, and more fundamentally, consideration of the performance of the school district's schools is relevant to determine whether nonrenewal for failure to meet academic performance standards would serve the educational purposes of the Charter School Law and the Public School Code. Closure of a charter school will send many of its students to the school district schools. If school district schools are achieving better academic results, even if those results are also below state standards, nonrenewal of the charter will place students in schools that better satisfy state educational requirements. In contrast, if a charter school's academic performance, even though poor, is consistently superior to the school district's results, it could be contrary to the purposes of improving learning and providing students a proper education to deny charter renewal based solely on the charter school's test scores. The Board therefore did not err in considering the fact that New Hope's proficiency rates were below those of School District's schools in upholding the nonrenewal of New Hope's charter.

### Violations Of The Ethics Act And Nonprofit Law

The Board's determinations that New Hope violated Section 1103 of the Ethics Act and the Nonprofit Law in it contracts with its founder Anderson's businesses are likewise supported by substantial evidence and legally valid.[11] Section 1103 of the Ethics Act prohibits "any contract valued at $500 or more" between a "public official . . . or any business in which the person

---

11. Because New Hope's poor academic performance constitutes a valid and sufficient ground for nonrenewal of its charter under Section 1729–A(a)(2) of the Charter School Law, it is not necessary to determine whether these violations are sufficient by themselves to sustain the nonrenewal. We address whether there was any error in the Board's findings and determinations on this issue, however, because of the importance of this issue in the Board's decision and because, unlike the other violations found by the Board, these governance matters involve New Hope's operations as a whole.

... is associated" and "the governmental body with which the public official ... is associated," unless the contract is "awarded through an open and public process, including prior public notice and subsequent public disclosure of all proposals considered and contracts awarded." 65 Pa.C.S. § 1103(f). Section 5712 of the Nonprofit Law provides that "[a] director of a nonprofit corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director ... in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances." 15 Pa.C.S. § 5712(a).

■ The Board found that New Hope's board of trustees did not discuss or consider the terms of the management agreements, leases, and AEDY contract with Anderson's businesses before approving them, and those findings are amply supported by the record. (Board Opinion at 46–51; School Board C.R. Ex. J SD–36, SD–49; School Board C.R. March 6, 2012 H.T. at 141–46, 157, 160–77.) The Board therefore properly concluded that New Hope did not enter into these contracts through an open process and that its trustees failed to fulfill their duties to exercise reasonable skill and diligence in approving these contracts.

■ New Hope's contention that its contracts with Anderson were not subject to the Ethics Act is without merit. The Charter School Law provides that any "person who serves as an administrator for a charter school shall be a public official" for purposes of the Ethics Act. Section 1715–A(12) of the Charter School Law, 24 P.S. § 17–1715–A(12). While Anderson was not a New Hope employee, the Charter School Law does not limit the term "administrator" to charter school employees. Rather, it states that "[t]he term 'administrator' shall *include* the chief executive officer of a charter school and all other employes of a charter school who by virtue of their positions exercise management or operational oversight responsibilities." *Id.* (emphasis added). New Hope's charter formally designated Anderson, individually, as its administrator for New Hope's first years of operation, and its 2008 and 2009 tax filings designated him as its principal officer and managing director. (New Hope Charter and Charter Application at 6, R.R. at 3a, 607a; School Board C.R. Ex. J SD–38 at 1, 7, SD–39 at 1, 7.) New Hope's dealings with Anderson and his businesses were therefore subject to the Ethics Act in 2007 and 2008, when it entered into the original management agreement, the first two leases and the AEDY contract with Anderson's businesses. (School Board C.R. Ex. K NH–14 Management Agreement, R.R. at 12a–31a; School Board C.R. Ex. J SD–36, SD–45a.)

### *Sufficiency Of The Board's Review*

■ New Hope also argues that the Board failed to conduct an independent review of the record and specifically articulate reasons for agreeing with School Board's decision. New Hope did not raise this issue in its petition for review, and it is therefore waived. *United Transportation Union v. Pennsylvania Public Utility Commission*, 68 A.3d 1026, 1042 (Pa.Cmwlth.2013). Moreover, even if it were not waived, this argument is plainly without merit. The Board's opinion shows the Board made additional findings of fact of its own, evaluated the School Board's findings, made its own conclusions of law, and discussed at length its reasons for upholding the nonrenewal and for rejecting New Hope's arguments. (Board Opinion at 7–51.) It is clear that

742

the Board conscientiously discharged its responsibility to independently review the record and thoroughly and specifically articulated its reasons for agreeing with the School Board's nonrenewal of New Hope's charter.

For the foregoing reasons, we affirm the decision of the Board upholding the nonrenewal of New Hope's charter.

Judge BROBSON concurs in the result only.

### ORDER

AND NOW, this 8th day of April, 2014, the order of the State Charter School Appeal Board dated October 29, 2013 in the above-captioned matter is AFFIRMED.

