Propel Charter Schools, : 
                 Petitioner : 
                  : 
        v. : 
                  : 
Pennsylvania Department of Education : 
(State Charter School Appeal Board), :   No. 1209 C.D. 2020
           Respondent :   Argued: October 18, 2021


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                            FILED: November 19, 2021

          Propel Charter Schools (Propel) petitions this Court for review of the State Charter School Appeal Board's (CAB) December 22, 2020 order that denied Propel's appeal from CAB's Hearing Officer's (Hearing Officer) order granting the Pennsylvania Department of Education's (Department) motion to supplement the record with Propel's 2017-18 school performance profile (SPP) scores (Motion to Supplement), and denied Propel's appeal from the Department's denial of Propel's application (Application) to operate a Multiple Charter School Organization (MCSO).  Propel presents three issues for this Court's review: (1) whether Propel's failure to adhere to the Department's MCSO Application Guide (Application Guide) is a proper basis for denying Propel's MCSO Application; (2) whether the Department's Application Guide is an improper regulation; and (3) whether CAB erred when it interpreted the Charter School Law (CSL)[1] to allow the consideration

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A - 17-1751-A.

of SPP data that became available after Propel filed the MCSO Application.[2]  After review, this Court affirms.[3]

In February 2018, the Department published an application form (Application Form) to be completed by charter schools seeking to establish an MCSO, and published the Application Guide in conjunction with the Application Form.

On May 4, 2018, Propel submitted the Application to the Department, wherein Propel sought to consolidate eight of its preexisting charter schools as a single MCSO.  The preexisting charter schools included: Propel Schools (operating as Propel Charter School-Homestead); Propel Charter School - East; Propel Charter School - McKeesport (Propel-McKeesport); Propel Charter School - Montour (Propel-Montour); Propel Charter School - Northside; Propel Charter School - Pitcairn; and Propel Charter School - Hazelwood.  The Department received the Application on May 7, 2018.

Propel also submitted its Application to the School District of Pittsburgh, Steel Valley School District, Woodland Hills School District, Penn Hills School District, McKeesport School District, Montour School District and Gateway School District.  Pursuant to Section 1729.1-A(a) of the CSL,[4] 24 P.S. § 17-1729.1-A(a), each school district and the Department had 45 days to render a decision on the Application.  On June 18, 2018, the School District of Pittsburgh voted to deny the Application.  No other school district responded to the Application within 45 days and, therefore, the Application was deemed approved by those school districts.

---

[2] This Court has reordered Propel's issues for ease of discussion.

[3] This matter was argued seriately with *Propel Charter Schools v. School District of Pittsburgh* (Pa. Cmwlth. No. 1210 C.D. 2020, filed Nov. 19, 2021).

[4] Section 1729.1-A of the CSL was added by Section 10 of the Act of November 6, 2017, P.L. 1142.

On June 20, 2018, the Department denied the Application. The Department based its denial on deficiencies in the following areas:

- Demonstration of Proper Planning and Preparation for Delivery of Educational Programs to Students
  - Special Education
  - Finance
- Governance
- **General Application Requirements**

Reproduced Record (R.R.) at 5445a (emphasis added). With respect to the General Application Requirements,[5] the Department concluded:

[5] The Department found Propel's Application deficient, in part, based on Propel's failure to comply with the sequential review instructions in the Department's Application Guide. The Department's Application Guide provides, in relevant part:

> The General Assembly did not provide express direction concerning the sequence of submission and review of MCSO applications to the chartering school district(s) and the Department. Therefore, the Department has concluded that the most reasonable way to implement the requirements relating to submission and review is through a sequential review.
>
> Under this sequential review process, the establishment of an MCSO begins with the submission of a complete and verified MCSO [a]pplication to the chartering school district(s) for each charter school under the proposed MCSO. In the case of a regional charter school, or when the charter schools seeking to form an MCSO have different chartering school districts, the MCSO [a]pplication must be submitted to all chartering school districts simultaneously. Chartering school district(s) have 45 days to review and act on an application for creation of an MCSO; if no action occurs within the 45 days, the application is deemed approved. 24 P.S. § 17-1729.1-A(a)(2). If a chartering school district disapproves an application and that disapproval is subsequently reversed by [] CAB[], *see* 24 P.S. § 17-1729.1-A(f), the application will be considered approved as of the date of CAB's written determination unless otherwise stayed by an appropriate order.
>
> After approval by the chartering school district(s) (or CAB) or the passage of 45 days, the MCSO [a]pplication is submitted to the Department. The MCSO [a]pplication submitted to the Department must be identical to that approved by the chartering school district(s). The Department has 45 days for review and action. 24

3

Because the MCSO Application submitted by [Propel] did not contain a proper date for when the Application was submitted to the chartering school districts, and because the MCSO Compliance Certification had been altered, [the Department] requested that [Propel] specifically identify the dates on which the Application was submitted to the districts and the action taken by, the districts. In response, [Propel] identified that the MCSO Application was received by Woodland Hills School District on May 3, 2018, and Gateway School District, McKeesport School District, Montour School District, Penn Hills School District, Pittsburgh School District, and Steel Valley School District on May 4, 2018; this information confirms that [Propel] did not comply with the application requirements. [The Department] also provided [Propel] with a new, unaltered MCSO Compliance Certificate to be executed and attested to by the proposed members of the MCSO's board of trustees. [Propel] did not resubmit the MCSO Compliance Certificate as requested.

Based on the above, [Propel] failed to submit its [A]pplication to form an MCSO to all its chartering school districts at least 45 days prior to submitting its [A]pplication to [the Department], and failed to properly complete the MCSO Compliance Certificate required as part of the MCSO [A]pplication, and the MCSO Application is, therefore, denied.

R.R. at 5453a.

On July 17, 2018, Propel filed an appeal to CAB. Propel's Application relied on Propel-McKeesport as its lone qualifying school to satisfy the CSL's

P.S. § 17-1729.1-A(a)(1). Disapproval by the Department is also subject to an appeal to CAB. *See* 24 P.S. § 17-1729.1-A(f).

This sequential review allows charter schools to address and resolve any concerns with the chartering school district(s), which have closer oversight of the charter schools, before seeking the Department's approval. Also, the sequential review eliminates the possibility of conflicting decisions on an MCSO [a]pplication being issued by the chartering school district(s) and the Department at the same time.

R.R. at 5869a-5870a.

4

MCSO approval requirement that at least one member school must have an SPP score that is among the top 25th percentile of Pennsylvania charter schools as measured by the SPP for the two most recent school years.

At the time Propel filed the Application with the Department, the two most recent school years for which SPP scores were available were the 2015-16 and 2016-17 school years. On December 21, 2018, the Department published SPP scores for the 2017-18 school year. On January 9, 2019, based upon the SPP scores for the 2017-18 school year, the Department updated its MCSO Eligibility List.

On January 29, 2019, the Department filed the Motion to Supplement. The purpose of the Motion to Supplement was to provide CAB with evidence that Propel-McKeesport was no longer ranked in the top quartile as it had been for the 2015-16 and 2016-17 school years. Because Propel-McKeesport had been the only school with an SPP score in the top quartile of charter schools in the Commonwealth, none of the eight schools in the proposed MCSO had an SPP score that would qualify Propel for MCSO eligibility. Along with its Motion to Supplement, the Department filed a Motion for Summary Judgment and Memorandum of Law in Support thereof. On March 19, 2019, the Hearing Officer granted the Motion to Supplement (March 19, 2019 Order). Propel appealed to CAB from the Hearing Officer's March 19, 2019 Order.

On May 21, 2019, the parties argued Propel's direct appeal to CAB from the Hearing Officer's March 19, 2019 Order and Propel's appeal from the Department's decision denying Propel's Application. Prior to the hearing, CAB Member Lee Ann Munger (CAB Member Munger) and the Department Secretary recused themselves from participating in both appeals.[6]

---

[6] CAB Member Munger explained that her children attend Propel.

At CAB's June 18, 2019 meeting, CAB Member Munger and the Department Secretary recused themselves from the vote, leaving a quorum - four CAB members - who voted 4-0 to deny Propel's appeal from the Hearing Officer's March 19, 2019 Order. Also, on June 18, 2019, CAB voted 3-1 to deny Propel's appeal from the Department's decision to deny Propel's Application; however, CAB tabled the matter as a nonactionable vote because CAB determined, in accordance with its interpretation of the CSL, that the 3-1 vote did not constitute a valid CAB action.[7]

On July 24, 2019, with the Department Secretary and CAB Member Munger again recusing, the same four CAB members voted on the substantive appeal from the Department's denial, resulting in another 3-1 vote, which CAB did not recognize as a valid CAB action. Once more, CAB tabled the matter.

On September 6, 2019, Propel filed a Motion to Permit CAB Member Munger to Vote. CAB counsel held a conference call with all of the parties to discuss Propel's Motion to Permit CAB Member Munger to Vote. On September 16, 2019, the Department filed its response in opposition thereto. On September 25, 2019, Propel withdrew its Motion to Permit CAB Member Munger to Vote, and filed a Motion to Allow Vote of 3-1 in this Matter as Proper (Vote Motion). On October 7, 2019, the Department filed its response thereto. At CAB's October 22, 2019 meeting, the parties argued the Vote Motion and CAB voted to deny the Vote Motion, and again attempted to vote on the substantive appeal, that resulted in a 3-1 vote to deny. CAB tabled the matter for a revote at its December 3, 2019 meeting. On November 27, 2019, CAB issued a written order denying the Vote Motion. On December 26, 2019, Propel appealed to this Court. On that same date, Propel also filed a Petition for Review in the Nature of a Declaratory Judgment Complaint in

_____

[7] Because a majority of the six CAB members did not vote unanimously, CAB determined that the 3-1 vote did not constitute a valid CAB action.

6

this Court's original jurisdiction seeking a declaration that the CAB votes and revotes were proper, and an order for CAB to promptly issue a written decision.[8]

On November 20, 2020, this Court ruled that CAB's 3-1 vote was proper, and reversed CAB's November 27, 2019 order.[9] This Court further directed that Propel had 30 days therefrom to appeal from CAB's denial of Propel's substantive appeal. On November 25, 2020, Propel filed the instant Petition for Review.[10] On December 23, 2020, CAB issued its written decision in support of its June 18, 2019 vote of 3-1 denying Propel's appeal and its denial of Propel's appeal from the Hearing Officer's March 19, 2019 Order.[11]

Propel argues that CAB erred when it concluded that Propel's failure to comply with the Department's Application Guide, specifically its requirement that Propel first submit the MCSO Application to the school districts and, only after approval by the school districts, to the Department, is a proper basis for denying Propel's Application. Propel expressly asserts:

> [The Department's] invented "requirement" for sequential
> review and approval of the Application cannot be a reason

---

[8] In February 2020, both the Department and Propel filed motions to supplement the record with SPP scores issued by the Department for the 2018-19 school year. Propel-McKeesport was once again in the top 25% for 2018-19, based upon the updated MCSO Eligibility List. On February 20, 2020, the parties submitted Joint Stipulations seeking to admit evidence with respect to the most recent MCSO Eligibility List and Propel-McKeesport's 2018-19 SPP score. The motions to supplement were deemed moot, and the Joint Stipulations were admitted into the record at CAB's February 25, 2020 meeting.

[9] *See Propel Charter Sch. v. Pa. Dep't of Educ.*, 242 A.3d 985 (Pa. Cmwlth. 2020); *Propel Charter Sch. v. Pa. Dep't of Educ.*, 243 A.3d 322 (Pa. Cmwlth. 2020); *Propel Charter Sch. v. Charter Sch. Appeal Bd.* (Pa. Cmwlth. No. 1827 C.D. 2019, filed Nov. 20, 2020).

[10] "Our review of [CAB's] decision is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence." *New Hope Acad. Charter Sch. v. Sch. Dist. of the City of York*, 89 A.3d 731, 736 (Pa. Cmwlth. 2014).

[11] CAB did not file an opinion in support of its June 18, 2019 vote denying Propel's substantive appeal before this Court issued its November 20, 2020 decision, due to its conclusion that the vote was not valid.

7

for denial by CAB or [the Department].  The timing of the Application submittal by Propel to [the Department] (i.e.[,] simultaneous or later) is of no moment to [the Department] in its evaluation of Propel's [A]pplication. Whether or not Propel submitted its [A]pplication in a particular sequence does not bear on [the Department]'s analysis as to whether Propel is eligible to consolidate. The MCSO [P]rovisions contained in the CSL do not require - or even provide for - a sequential review process.

Propel Br. at 28.

In its Decision, CAB explained:

[T]he Application Guide . . . explicitly states that "the most reasonable way to implement the [MCSO's] requirements relating to submission and review is through a sequential review."  ([] Application Guide[ at] 2).  The Application Guide goes on to state that "[a]fter approval by the chartering school district(s) (or CAB) or the passage of 45 days, the MCSO [a]pplication is submitted to the Department."  ([] Application Guide[ at] 2).  While the Application Guide's language is not expressed as a command or mandate (e.g., "the review shall be sequential"), no reasonable reading of that language would interpret it as providing an applicant with discretion in the timing of its filings, and an applicant choosing its own filing sequence would necessarily do so at its peril. Therefore, Propel's argument in this regard provides no grounds on which to reverse the denial of its Application.

CAB Dec. at 24, R.R. at 5833a.

Section 1729.1-A of the CSL, which provides for the establishment of MCSOs (MCSO Provisions), states, in relevant part:

(a) Establishment shall be as follows:

(1) Subject to the requirements of this section and [Part 2, Subchapter C of the Associations Code, ]15 Pa.C.S. Pt. II Subpt. C[, 15 Pa.C.S. §§ 6101-6162] (relating to

8

nonprofit corporations),[12] two (2) or more charter schools may consolidate into a[n] [MCSO] **if both of the following apply**:

(i) **The [D]epartment approves the consolidation** as proposed in the application form submitted to the [D]epartment pursuant to subsection (c). If the [D]epartment does not approve or disapprove the proposed consolidation within forty-five (45) days after receipt of the application, the [D]epartment will be deemed to have approved the consolidation.

(ii) **Each school district that granted the initial charter of any charter school included in the proposed consolidation approves**, by a majority vote of the local board of school directors, a resolution approving the consolidation as proposed in the application submitted to the local board of school directors pursuant to subsection (c). If a local board of school directors does not adopt a resolution under this clause approving or rejecting the proposed consolidation within forty-five (45) days after receipt of the application, the school district will be deemed to have approved the consolidation.

. . . .

(b) (1) **A charter school that**, **within either of the most recent two (2) school years**, **has failed to meet any of**

---

[12] The Department contends that "[c]harter schools seeking to form an MCSO must maintain eligibility pursuant to [S]ection 1729.1-A(b) [of the CSL] until the merger has become effective." Department Br. at 13. Further,

[c]harter schools seeking to merge as an MCSO are expressly subject to the requirements of . . . Pt. [II] Subpt. C [of the Associations Code]. 24 P.S. § 17-1729.1-A(a)(1). The Associations Code[, 15 Pa.C.S. §§ 101-9507,] requires a regulated entity obtain the necessary approvals "before it may participate in any form of transaction under this chapter." 15 Pa.C.S. §§ 103, 314(a). A merger under the Associations Code is not effective until the plan or statement has been filed with the Pennsylvania Department of State, which entities may not do until the necessary approvals have been obtained. 15 Pa.C.S. § 335(e)-(g).

Department Br. at 14.

**the following shall not be eligible to consolidate with another charter school**:

(i) Requirements for student performance set forth in [Chapter 4 of the State Board of Education's Regulations,] 22 Pa. Code Ch. 4[, §§ 4.1-4.82] (relating to academic standards and assessment).

(ii) Accepted standards of fiscal management or audit requirements.

(iii) **A[n] [SPP] score that is among the top twenty-fifth percentile of Pennsylvania charter schools as measured by the [SPP] for the most recent year for which a[n] [SPP] score is available**.

(2) **A charter school that has failed to meet any of the requirements of paragraph (1) may consolidate if the consolidation includes a charter school demonstrating that it has satisfied such requirements for the most recent two (2) school years**.

(c) Within ninety (90) days of the effective date of this section, the [D]epartment shall develop and issue a standard **application form that [MCSO] applicants must submit to the [D]epartment and to the local board of school directors** of each school district that granted the initial charter of any charter school included in the proposed consolidation. . . .

. . . .

(f) Appeals shall be as follows:

(1) [CAB] shall have the exclusive review of an appeal by an applicant for consolidation, with respect to the rejection of a proposed consolidation by either the [D]epartment or a school district.

(2) **In considering an appeal** under this section, [**CAB**] **shall**:

(i) Review the decision made by either the [D]epartment or the school district on the record as certified by the entity that made the decision being appealed, **provided that [CAB] may allow the**

10

**[D]epartment, a school district or the applicant for consolidation to supplement the record if the supplemental information was previously unavailable**.

(ii) Meet to officially review the certified record no later than thirty (30) days after the date of filing the appeal.

(iii) Issue a written decision affirming or denying the appeal no later than sixty (60) days following its review of the certified record.

(iv) **Make its decision based on whether the proposed consolidation satisfies the requirements of subsections (b) and (c).**

. . . .

(4) All decisions of [CAB] shall be subject to appellate review by the Commonwealth Court. In the event of an appeal of a decision by [CAB] to the Commonwealth Court, the decision of [CAB] shall be stayed only upon order of [CAB], the Commonwealth Court or the Pennsylvania Supreme Court.

24 P.S. § 17-1729.1-A (emphasis added).

Propel argues that its failure to comply with the Department's sequential review process set forth in the Application Guide is not a valid basis for the Department or CAB to deny the Application. The Department's Application Guide provides that **only after** obtaining the approval from the applicable school districts, as required in Section 1729.1-A(a)(1)(ii) of the CSL, may the applicant submit an application to the Department under Section 1729.1-A(a)(1)(i) of the CSL.

Propel correctly observes that there is no such requirement in the CSL's MCSO Provisions, as Section 1729.1-A(a)(1) of the CSL simply provides that applications are to be submitted to the applicable school districts and to the Department, and that the school districts and the Department must render their

11

decisions within 45 days of their receipt of the respective application or the respective application will be deemed approved. *See* 24 P.S. § 17-1729.1-A(a)(1).[13]

In response, the Department argues that, pursuant to Section 1729.1-A(c) of the CSL, it was required to develop a standard MCSO application. Although Section 1729.1-A of the CSL does not mandate sequential review, the Department concluded that sequential review was "the most reasonable way to implement the requirements relating to submission and review[.]" Department Br. at 17. It contends that its interpretation of the MCSO Provisions of the CSL is entitled to deference since it is the agency charged with the CSL's implementation and, as an interpretive rule, the Department's interpretation of Section 1729.1-A of the CSL providing for sequential review is not clearly erroneous, unwise, or violative of legislative intent.

The Pennsylvania Supreme Court has explained:

This Court has held "[a]n interpretation by the agency charged with the administration of a particular law is normally accorded deference, unless clearly erroneous." *Harkness v.* [*Unemployment Comp. Bd. of Rev.*], . . . 920 A.2d 162, 171 ([Pa.] 2007). Moreover, since *Harkness*, we have described two types of agency interpretations which are accorded different levels of deference. Agency interpretations that are promulgated in published rules and regulations have been referred to as "legislative rules" and "are accorded a particularly high measure of deference[,]" also known as *Chevron*[14] deference, and "enjoy a presumption of reasonableness[.]" *N*[*w.*] *Youth Serv*[*s., Inc. v. Dep't of Pub. Welfare*,] 66 A.3d [301,] 310-11 [(Pa. 2013)]. Non-legislative rules, also known as "interpretive rules" or "guidance documents," such as "manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, [and] press

---

[13] Section 1729.1-A(a)(1) of the CSL merely lists approval by both the Department and the applicable school districts as requirements for an MCSO. Notably, Section 1729.1-A(a)(1) of the CSL lists the Department's approval first. *See* 24 P.S. § 17-1729.1-A(a)(1)(i), (ii).

[14] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

releases" are accorded "a lesser quantum of deference[,]" also known as *Skidmore*[15] deference, which allows an agency's interpretation to be disregarded when a court is "'convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent.'" *Id.* at 310-12, *quoting Pa. Hum*[.] *Rel*[.] *Comm'n v. Uniontown Area Sch*[.] *Dist*[.], . . . 313 A.2d 156, 169 ([Pa.] 1973).

*Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 299-300 (Pa. 2019) (footnotes omitted). The Department asserts that the Application Guide is an interpretive rule, which should be afforded *Skidmore* deference.

With respect to an initial application for a charter under Section 1717-A of the CSL, this Court has explained:

> [T]he legislature apparently appreciated that timeliness was an important element in assuring the fairness of the charter school application and review process. This is evident from the legislature's inclusion of time limitations at every stage of these proceedings under the CSL. Thus, **the essence of the thing to be accomplished by the CSL is the prompt adjudication of charter school applications**. It is with this in mind that we recently considered a time limitation imposed under the CSL and held:
>
>> The [CSL] emphasizes that time is of the essence and directs the local school boards and [CAB] to quickly resolve the issue of whether to grant or deny an institution[']s charter school application. Thus, we conclude that the legislature's use of the word "shall" in Section 1717-A(i)(8) [of the CSL] . . . is mandatory, requiring [CAB] to issue its written decision and order within 60 days of its final hearing on an application.
>
> *Shenango Valley Reg*[*'l*] *Charter Sch*[.] *v. Hermitage Sch*[.] *Dist*[.], 756 A.2d 1191, 1194 (Pa. Cmwlth. 2000).

---

[15] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

*Sch. Dist. of Phila. v. Indep. Charter Sch.*, 774 A.2d 798, 802-03 (Pa. Cmwlth. 2001) (emphasis added; footnotes omitted).

Similarly, here, the General Assembly imposed a strict 45-day MCSO application review time limit for both the Department and the school districts, providing that if a decision was not rendered on the application within the allotted time, the application would be deemed approved. *See* 24 P.S. § 17-1729.1-A(a)(1)(i),(ii). It also imposed strict time requirements on CAB's disposition of appeals therefrom. *See* 24 P.S. § 17-1729.1-A(f)(2)(ii), (iii).

In its Application Guide, the Department requires, without explicit statutory authority, an applicant to obtain the applicable school districts' approval before submitting an application to the Department. In doing so, the Department extended a process, the timeframe for which the General Assembly explicitly dictated. Because an applicant that might otherwise submit applications to the school districts and the Department on the same day, in accordance with the Application Guide, must wait up to 45 days for the school districts' decision before filing the application with the Department, the application process time period envisioned by the General Assembly is effectively doubled. Such an interpretation of the CSL is clearly inconsistent with the aforementioned legislative intent. *See Harmon*. Because CAB's interpretation is inconsistent with the CSL, it does not merit *Skidmore* deference.[16] Accordingly, CAB erred when it concluded that Propel's failure to comply with the Department's requirement that Propel first submit the MCSO Application to the school districts and, only upon approval by the

---

[16] Propel also contends that CAB erred when it relied on the Application Guide because the Application Guide is an improper regulation. The Department denies that it attempted to create binding regulations through the use of the Application Guide. *See* Department Br. at 20. Rather, the Department claims the Application Guide is an interpretive rule. Based on this Court's ruling that the Department's interpretive rule with respect to sequential review is violative of legislative intent, the Department's interpretation is to be disregarded.

14

school districts, to the Department, was a proper basis for denying Propel's Application.

Propel next argues that CAB erred when it denied Propel's appeal from the Hearing Officer's decision granting the Motion to Supplement by interpreting the CSL to allow CAB to consider SPP data that became available after Propel filed the Application.[17]

The Pennsylvania Supreme Court has held that "CAB must apply a *de novo* standard of review when entertaining appeals from a [school d]istrict [b]oard's denial of a charter school application." *W. Chester Area Sch. Dist. v. Collegium Charter Sch.*, 812 A.2d 1172, 1180 (Pa. 2002).[18] Pursuant to Section 1729.1-

---

[17] According to Propel, its lack of eligibility under the MCSO Provisions pertaining to SPP scores resulted from CAB's lengthy delay in rendering a decision on its Application.

[18] *West Chester* involved Section 1717-A of the CSL, added by the Act of June 19, 1997, P.L. 225, 24 P.S. § 17-1717-A, rather than Section 1729.1-A of the CSL. The *West Chester* Court explained:

> Section []1717-A(i)(6) [of the CSL, 24 P.S. § 17-1717-A(i)(6)] grants [] CAB discretion to permit the parties to supplement the record with previously unavailable information. Such directive is inconsistent with traditional appellate review. Moreover, [Section 1717-A(i)(10) of] the CSL specifically articulates that "all decisions of the appeal board shall be subject to appellate review *by the Commonwealth Court*." 24 P.S. § 17-1717-A(i)(10) (emphasis added). Had the Legislature intended [] CAB to also utilize an appellate standard of review, it could have similarly provided. Finally, we note that the composition of [] CAB supports a finding of *de novo* review. [] CAB is not comprised of attorneys capable of conducting a legal examination of the evidence, but rather consists of persons who have a perspective on public education. *See* [Section 1721-A of the CSL,] 24 P.S. § 17-1721-A(a) (stating composition of CAB as: a parent, a school board member, a certified teacher, a faculty or administrative employee, a business person, and a member of [the] State Board of Education).

*W. Chester*, 812 A.2d at 1180. Similarly, Section 1729.1-A of the CSL grants CAB discretion to supplement the record and provides that all CAB decisions shall be subject to appellate review by this Court. Thus, this Court concludes that Section 1729.1-A of the CSL similarly contemplates that CAB will conduct a *de novo* review.

15

A(f)(2)(i) of the CSL, CAB's review of the decision below may allow supplementation of the record, and, **pursuant to Section 1729.1-A(f)(2)(iv) of the CSL**, **CAB must make an independent determination of whether the charter school has satisfied the requirements of Subsection 1729.1-A(b) of the CSL** (**disqualifying MCSO applicants that**, within either of the most recent two school years have failed to meet student performance requirements, failed to maintain fiscal management standards, or **failed to achieve SPP scores in the top 25 percentile**) **and Subsection 1729.1-A(c) of the CSL**.

In approving the Hearing Officer's record supplementation with the 2017-18 school year SPP data, CAB noted that Section 1729.1-A(f)(2)(i) of the CSL authorized it to supplement the record and further reasoned:

> It is without question that the information related to SPP scores issued by the Department for the 2017-18 school year was previously unavailable and could not have been obtained or submitted for inclusion in the record prior to the Department's decision to deny Propel's [] Application. As such, the evidence related to the <u>Charter Schools Meeting [MCSO] Eligibility Criteria</u> - 24 P.S. § 17-1729.1-A, containing 2016-17 and 2017-18 data, appended to the Department's Motion to Supplement, clearly constitutes admissible supplementary evidence. Thus, the Hearing Officer properly granted the Department's Motion to Supplement, and the updated MCSO Eligibility List, containing the 2017-18 school year SPP scores, shall be admitted into the record.

CAB Dec. at 18-19, R.R. at 5827a-5828a. CAB concluded that the most recently available SPP data was relevant information given its duty to ensure compliance with the CSL's requirement that at least one charter school had met the required SPP threshold for the two most recent school years for which scores were available. *See* CAB Dec. at 20, R.R. at 5829a; *see also* 24 P.S. § 17-1729.1-A(b).

16

CAB rejected Propel's argument[19] that it should only consider the SPP scores that were available at the time of its Application, explaining:

> These arguments were well made but ultimately unpersuasive in light of the more overarching intent of the General Assembly in enacting the CSL, which provides in relevant part:
>
>> It is the intent of the General Assembly, in enacting this article, to provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure as a method to accomplish all of the following:
>>
>> (1) Improve pupil learning.
>>
>> (2) Increase learning opportunities for all pupils.
>>
>> . . . .
>>
>> (5) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.
>>
>> (6) Hold the schools established under this [A]ct accountable for meeting measurable academic standards . . . .
>
> [Section 1702-A(1), (2), (5) and (6) of the CSL,] 24 P.S. § 17-1702-A(1), (2), (5) and (6).
>
> In support of the CSL's intent to hold charter schools accountable for meeting measurable academic standards, it appears that the General Assembly enacted the SPP score criteria in MCSO Section []1729.1-A(b)(1) and (2)

---

[19] According to CAB, Propel essentially claimed that "the qualifier []*as of the date of the Application*[] must be read into the 'most recent two (2) school years'" language in Section 1729.1-A(b)(1) of the CSL, CAB Dec. at 28, R.R. at 5837a (italics added), and that "the 'mandatory timelines for action on both charter school applications and MCSO applications' [were] statutory illustrations of legislative intent not to allow for repeatedly reevaluating an MCSO's eligibility based on updated information, including previously unavailable SPP scores." CAB Dec. at 29, R.R. at 5838a.

17

[of the CSL] as quality-control measures for schools seeking to consolidate. If an applicant school cannot demonstrate its success as measured by its ranking, then it cannot be qualified to expand itself through the MCSO process. To hold that [] CAB may only consider the SPP score rankings from the two years immediately prior to the application date would be inconsistent with the legislative intent to improve learning and learning opportunities, and to hold charter schools to measured standards. As the intent expressed in [S]ection []1702-A(1) and (2) [of the CSL] for increased learning and learning opportunities is a continuing goal not limited to a single point in time, the issue of the quality of learning being provided by schools proposing to consolidate is *always* relevant. Therefore, SPP rankings are also always relevant.

CAB Dec. at 29-30, R.R. at 5838a-5839a. Notably, the express prohibition on merging in Section 1729.1-A(b) of the CSL, where, *inter alia*, the proposed MCSO fails to include a charter school that meets the 25th percentile SPP requirement, is a separate threshold from the school district's and the Department's approval requirement contained in Section 1729.1-A(a) of the CSL.

Propel cites *Souderton Area School District v. Souderton Charter School Collaborative*, 764 A.2d 688 (Pa. Cmwlth. 2000), and *Brackbill v. Ron Brown Charter School*, 777 A.2d 131 (Pa. Cmwlth. 2001), to support its contention that CAB erred when it supplemented the record in this matter with the SPP data released after Propel filed the Application, because "CAB and [the] Commonwealth Court have interpreted . . . the [CSL] to provide for eligibility at the time the application was submitted." Propel Br. at 21. Both *Souderton* and *Brackbill* involved the loss or the potential loss of a facility location identified in a charter school application.

In *Souderton*, CAB disagreed with a school board's finding that the proposed short-term facility location was inappropriate and was a substantial safety and welfare risk to students. Given that the charter school's plan was more than two

18

years out of date, CAB questioned whether the proposed facility was still available for the charter school's use. Nonetheless, CAB noted its responsibility to review the application on the record certified by the school board as submitted, and concluded that since the application was acceptable at the time it was submitted, it did not constitute a basis for denial.

On review, this Court explained:

[I]n its opinion, [] CAB simply points out the very real possibility that, because [the applicant's] [a]pplication is more than two years old, the [s]trip [m]all [f]acility that was to house the charter school may no longer be available. Despite this realization, [] CAB recognized that, in ruling on [the applicant's] appeal, [] CAB only could review the suitability of the [s]trip [m]all [f]acility presented in the [a]pplication. Having determined that this [s]trip [m]all [f]acility was available and acceptable *at the time the [a]pplication was submitted*, [] CAB could not deny [the applicant's] appeal based on the possibility that this particular facility might not be available currently.

Viewing [] CAB's order in light of the reasoning set forth in its opinion, it becomes apparent that, in directing the [d]istrict [b]oard to sign [the applicant's] charter school [a]pplication, [] CAB refers *only* to the [a]pplication including the [s]trip [m]all [f]acility. The final sentence of [] CAB's order merely reflects [] CAB's recognition of a possible problem with the [a]pplication's listed facility. Thus, [] **CAB directs [the applicant] to inform the [s]chool [d]istrict and [] CAB in the event that [the applicant] would need to use a different facility**. **In this way**, **the [s]chool [d]istrict and [] CAB would be aware that [the applicant] would have to submit a new application to the [d]istrict [b]oard and afford the [d]istrict [b]oard an opportunity to consider whether the facility is appropriate under the CSL**.

*Souderton*, 764 A.2d at 697-98 (footnote omitted; bold emphasis added).

In *Brackbill*, a school district challenging CAB's grant of a charter claimed that CAB erred because the proposed location listed in the charter

19

application was no longer available. This Court rejected the school district's argument, reasoning:

> The [c]harter [s]chool properly listed two facilities in its application in compliance with the statutory requirement. The [s]chool [d]istrict, through the delay caused by its inaction, appears to have caused the [c]harter [s]chool's loss of rights in these proposed facilities. It would be unreasonable to expect an applicant to maintain rights in the precise vacant property listed in an application for the period which it has taken for the revised application to wend its way from the [d]istrict [b]oard to [] CAB to this [C]ourt. Moreover, by failing to act on the revised application, the [s]chool [d]istrict abdicated to [] CAB the authority to review all of the relevant criteria. We believe that [] CAB appropriately weighed this factor in its determination to grant the charter. Although an applicant must include a proposed facility in its application, there is no requirement that the facility be under a contractual obligation before the charter is granted. On the contrary, [] Section 1717-A(e)(2) [of the] CSL simply provides that[]
>
> > [a] charter school application submitted under this article shall be evaluated . . . based on criteria including, but not limited to, the following:
> >
> > * * *
> >
> > (iii) The extent to which the application considers the information requested in [S]ection 1719-A [of the CSL]. . . .
>
> 24 P.S. § 17-1717-A(e)(2). [] CAB found that the [c]harter [s]chool had met the statutory requirements and thus had appropriately considered the facility necessary for operation of its school. Therefore, we believe [] CAB acted within its discretion in granting the charter **subject to the requirement that the [c]harter [s]chool present information regarding its facility prior to the opening of the school**.

*Brackbill*, 777 A.2d at 139 (footnote omitted; bold emphasis added).[20]

Notably, in both of these cases involving the review of an initial charter application, this Court affirmed CAB's decision where that decision **conditioned the charter grant on the applicant providing updated facility information to determine compliance with the CSL**. Thus, although the applications were approved based on the information submitted, the ultimate charter grant was conditioned on CSL compliance involving circumstances occurring after the application submission date. Accordingly, neither *Souderton* nor *Brackbill* stand for

---

[20] Apart from its reliance on *Souderton* and *Brackbill*, Propel contends that "[a] second, but equally important aspect of the CSL that provides evidence of the General Assembly's legislative intent are the mandatory timelines for action on both charter school applications and MCSO applications." Propel Br. at 21. Propel further urges:

> As noted by the Commonwealth Court in *Independence Charter School*, "the legislature apparently appreciated that timeliness was an important element in assuring the fairness of the charter school application and review process." [*Id.*] at 803. These provisions apply equally to the MCSO [P]rovisions as they do to establishing the charter school . . . .

Propel Br. at 23. According to Propel,

> good sense and practicality demand that the relevant time period to consider the SPP data in the instant appeal is at the time the Application was filed with [the Department]. Any other possible result would allow for the charter schools that have filed a consolidation application to potentially be subject to a rollercoaster of eligibility determinations based upon updated data while the application sits in litigation limbo.

Propel Br. at 26-27 (footnote omitted). This Court disagrees.

When considering an MCSO appeal, CAB is specifically charged with a duty to ensure that the applicant is not ineligible due to the applicant's failure to maintain student performance requirements, lack of accepted standards of fiscal management or audit requirements and that the applicant has an SPP profile among the top 25th percentile. *See* 24 P.S. § 17-1729.1-A(f)(2)(iv) (referencing Section 1729.1-A(b) and (c) of the CSL). Unlike both *Souderton* and *Brackbill*, where the charter school applicants were unable to prevent a private landlord from leasing to another their intended future location, an applicant's adherence to the standards in Section 1729.1-A(b) of the CSL, is within the applicant's control. It is not unreasonable to expect an MCSO applicant to maintain the required standards at least until CAB has rendered a decision on its MCSO application appeal.

the proposition that CAB must ignore changes in circumstances occurring after the application date which render applicants statutorily ineligible to effect a merger under the CSL.

Interestingly, in *Montour School District v. Propel Charter School-Montour*, 889 A.2d 682 (Pa. Cmwlth. 2006), a case involving one of the same schools included in Propel's Application, the Montour School District (MSD) sought review of CAB's order reversing MSD's denial of a charter application for Propel-Montour. At argument before CAB, Propel-Montour notified MSD and CAB that it recently learned that its proposed facility was no longer available. Propel-Montour represented that it was pursuing a lease for another facility, but that such lease would require zoning changes for charter school use. MSD objected to the submission of any evidence with respect to the new facility and CAB barred the submission of such evidence. Nonetheless, CAB reversed MSD's denial of Propel-Montour's application. On appeal to this Court, MSD argued, *inter alia*, that CAB erred by ordering MSD to issue a charter without an identified location, and requiring Propel-Montour to merely inform MSD and CAB of the new location without requiring submission of the proposed site for MSD's approval. In response, Propel-Montour argued that "it was prepared and willing to present evidence of the new proposed facility at oral argument before CAB, but was not allowed to do so because of [MSD's] vigorous objections." *Montour*, 889 A.2d at 688.

The *Montour* Court explained:

> We have previously held that CAB has the authority to conduct a *de novo* review of a school district's denial of a charter application. Here, however, given its authority to conduct a *de novo* review, CAB erroneously failed to hear [Propel-Montour's] evidence concerning the new proposed site when it sustained the [school d]istrict's objections. Under *Souderton*, CAB could not then order the [d]istrict to grant the charter in the absence of any evidence of a proposed site for the school. Accordingly,

22

because CAB failed to hear and consider [Propel-Montour's] evidence with regard to the new proposed facility, we must vacate CAB's order and remand to CAB for the purpose of hearing this evidence to determine whether the new proposed site is suitable under the CSL before CAB can order the charter to be granted.

*Montour*, 889 A.2d at 690 (italics added).

This Court addressed the propriety of supplementing a record with recently released SPP scores in *Reading School District v. I-Lead Charter School*, 206 A.3d 27 (Pa. Cmwlth. 2019), a charter school revocation case **where evidence of the school's performance was relevant to CAB's decision**. In *I-Lead*, this Court considered whether CAB properly reversed a school district's charter revocation. In conducting its review, CAB granted the school district's motion to supplement the record to include significantly lower SPP scores released after the school district rendered its decision, but did not consider the supplemented SPP scores when it reversed the school district's revocation. Section 1729-A(d) of the CSL governed CAB's exercise of its independent judgment and provided, in relevant part:

> [CAB] shall have the exclusive review of a decision not to renew or revoke a charter. [CAB] shall review the record and shall have the discretion to supplement the record if the supplemental information was previously unavailable. [CAB] may consider the charter school plan, annual reports, student performance and employe and community support for the charter school in addition to the record. [CAB] shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision[.]

24 P.S. § 17-1729-A(d).

23

In holding that CAB deliberately disregarded the supplemented evidence, this Court recognized with respect to the similar statutory language in Section 1729-A of the CSL permitting supplementation of the record,

> [b]ased on its clear language, Section 1729-A(d) of the CSL **specifically contemplates** that, on appeal, CAB may consider information that did not inform a school district's decision. This statement is consistent with CAB's *de novo* review function, "making an independent determination as to the merits . . . ." *W. Chester*, 812 A.2d at 1180.

*I-Lead*, 206 A.3d at 36 (footnote omitted). In a footnote, the *I-Lead* Court recognized that

> prior CAB decisions have relied upon student performance data occurring after a school district resolved to revoke a charter. *See, e.g.*, *Imani Educ. Circle Charter Sch.* [*v. Sch. Dist. of Phila.*, (Dkt. No. CAB 2014-08, filed May 11, 2016)]; *Cmty. Acad. of Phila. Charter Sch. v. Sch. Dist. of Phila., Sch. Reform Comm'n*, (Dkt. No. CAB 2013-12, filed September 8, 2014).

*I-Lead*, 206 A.3d at 36 n.19.

The statutory language at issue in Section 1729.1-A of the CSL pertaining to MCSO approval is similar to that in Section 1729-A of the CSL at issue in *I-Lead*. Like Section 1729-A(d) of the CSL, Section 1729.1-A(f) of the CSL (pertaining to MCSO appeals) provides that it is CAB's duty to "[r]eview the decision made by either the [D]epartment or school district on the record as certified . . . [and in its discretion, permit parties to] supplement the record if the supplemental information was previously unavailable." 24 P.S. § 17-1729.1-A(f)(2)(i).

Although, unlike Section 1729-A(d) of the CSL, Section 1729.1-A(f) of the CSL does not explicitly authorize CAB to consider evidence "in addition to the record[,]" 24 P.S. § 17-1729-A(d), it allows CAB to supplement the record, which CAB did. *See* 24 P.S. § 17-1729.1-A(f)(2)(i). Propel argues that this Court

24

should limit CAB's ability to supplement the record only to evidence existing at the time it filed its Application. There is no language in Section 1729.1-A(f)(2)(i) of the CSL limiting relevant evidence only to evidence available at the time the MCSO Application was filed. It is beyond cavil that "courts 'have no authority to add or insert language into a statute' and should not, through interpretation, add a requirement that the General Assembly did not include." *Twp. of Wash. v. Twp. of Upper Burrell*, 184 A.3d 1083, 1089 (Pa. Cmwlth. 2018) (quoting *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 199 (Pa. Cmwlth. 2015)).

Like Section 1729-A(d) of the CSL, Section 1729.1-A(f)(2)(i) of the CSL, "**specifically contemplates** that, on appeal, CAB[, through supplementation of the record with relevant evidence,] may consider information that did not inform a school district's [or the Department's] decision." *I-Lead*, 206 A.3d at 36. Subsection 1729.1-A(f)(2)(iv) of the CSL, imposes a duty on CAB to "[m]ake its decision based on whether the proposed consolidation satisfies the requirements of subsections (b) [(disqualifying from mergers those charter schools that fail to meet the top twenty-fifth percentile SPP threshold for the two most recent school years for which scores are available),] and (c) [(governing application submission)]."[21] 24 P.S. § 17-1729.1-A(f)(2)(iv). Where, as here, such relevant evidence pertains to

---

[21] Propel strongly asserts that its inability to meet the SPP threshold is a direct consequence of CAB's delay in rendering a valid vote on its Application. It insists that, because it satisfied the SPP threshold at the time of its Application and during the period that CAB was statutorily required to issue a decision on its appeal, CAB's delay in rendering a decision (during which time new SPP scores were released) caused Propel's SPP threshold deficiency. Notably, Propel did not challenge the *validity* of CAB's decision based on CAB's delay. This Court acknowledges that CAB's inability to render a decision on the Application lengthened the review process beyond that permitted in the MCSO Provisions. Notwithstanding, of the eight charter schools included in the Application, only Propel-McKeesport satisfied the SPP threshold at the time of filing, and even that school subsequently fell below the SPP threshold. Thus, at the time that CAB rendered its decision on the Application, not a single school out of the eight satisfied the threshold requirement. Despite the delay which exceeded CAB's statutorily-mandated review window, neither CAB, nor this Court may ignore other mandates in the MCSO Provisions.

CAB's explicitly imposed statutory duty to ensure that at least one of the schools in the proposed MCSO meets the SPP threshold requirements, requiring CAB to ignore evidence that the applicants no longer meet the requirements would impede CAB's ability to perform its duties. The approval of a noncompliant applicant's MCSO application would undermine "[t]he core purpose of the [CSL, which] is to improve students' education." *New Hope Acad. Charter Sch. v. Sch. Dist. of the City of York*, 89 A.3d 731, 739 (Pa. Cmwlth. 2014).

> The *New Hope* Court further explained:
>
> T]he General Assembly expressly set forth its intention in enacting the [CSL] to "[i]**mprove pupil learning**," "[i]ncrease learning opportunities for all pupils," and "[h]**old the schools established under [the CSL] accountable for meeting measurable academic standards and provide the school with a method to establish accountability systems**." [Section 1702-A (1), (2), (6) of the CSL,] 24 P.S. § 17-1702-A(1), (2), (6)[.]

*New Hope*, 89 A.3d at 739 (emphasis added; citation omitted). Therefore, considering an applicants' most recent SPP scores in reviewing a charter school merger decision furthers these expressed intentions by permitting CAB to more accurately consider the potential merger's impact on the affected students. Accordingly, this Court concludes that CAB properly denied Propel's appeal from the Hearing Officer's decision granting the Motion to Supplement. Further, because Propel failed to meet Section 1729.1-A(b)(1) of the CSL's threshold requirements pertaining to SPP data, it did not qualify for MCSO approval.[22]

---

[22] CAB correctly concluded:

> For purposes of the Application, the "most recent two (2) school years" were 2017-18 and 2018-19; and, given as much, Propel does not meet the application requirements for an MCSO under [Section] []1729.1-A(b)(1) [of the CSL] because its [A]pplication lacks a school within the [top 25th percentile] of Pennsylvania [c]harter

For the foregoing reasons, CAB's order is affirmed.


_____
ANNE E. COVEY, Judge

---

[s]chools for the two most recent school years for which scores are available, as evidenced by the updated MCSO Eligibility List.

. . . .

Accordingly, . . . while the Department's denial of the Application was not independently supported by each and every reason stated in its denial letter, the Application as a whole failed to support Propel's entitlement to MCSO status, especially in light of its current inability to meet the express requirements of [Section] 1729.1-A (b)(1)(iii) or (2) [of the CSL].

CAB Dec. at 31, R.R. at 5840a.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Propel Charter Schools,         :
            Petitioner       :
                               :
      v.                   :
                               :
Pennsylvania Department of Education   :
(State Charter School Appeal Board),    :     No. 1209 C.D. 2020
            Respondent      :

## O R D E R

      AND NOW, this 19th day of November, 2021, the State Charter School Appeal Board's December 22, 2020 order is affirmed.

 

                        _____

                        ANNE E. COVEY, Judge